UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MARIA J. BRUNSWICK, )<br>    Plaintiff                )<br>                                )<br>v.                                )     NO. 2:11cv27<br>                                )<br>MENARD, INC.            )<br>    Defendant.            ) | |

REPORT AND RECOMMENDATION

This matter is before the court on the Motion to Exclude the Plaintiffs' Healthcare Providers and Medical Records [DE 34] filed by the defendant, Menard, Inc., on February 26, 2013. For the following reasons, it is **RECOMMENDED** that the motion [DE 34] is **GRANTED IN PART** and **DENIED IN PART.**

Background

On February 10, 2011, the plaintiff, Maria Brunswick, filed her First Amended Complaint alleging that on February 21, 2009, she was injured when she slipped and fell on a liquid substance at the property owned and operated by the defendant, Menard, Inc., in Schererville, Indiana. After the incident, Brunswick was evaluated by Dr. David Foriet and followed his plan of care.

On February 24, 2011, Brunswick turned over her initial disclosures. She named Dr. Foreit as her treating physician and stated that he had knowledge of her treatment and the injuries sustained from the fall. Brunswick also identified Dr. Nitin Khanna as a treating physician, reporting that she had knowledge of Brunswick's treatment for back and leg pain. Dr. Satish Dasari was identified as the spine specialist who she primarily saw for pain management.

1

On May 27, 2011, the court held a preliminary pretrial conference and set the discovery deadline for October 31, 2011, the deadline for Brunswick to disclosure her experts and provide their reports as August 2, 2011, and the defendant's expert disclosure deadline as September 2, 2011.

On August 5, 2011, Brunswick's counsel received notice that Menard wanted to take the depositions of all three physicians. Brunswick's counsel provided their fee schedules. The following month Brunswick supplemented her initial disclosures, adding to the proposed testimony of the treating physicians she identified. Specifically, she stated that Dr. Foreit would testify about the diagnosis, prognosis, Brunswick's past and current medical conditions, issues related to causation, recommendations related to the course of treatment, issues related to the cause of Brunswick's injuries, and the aggravation of Brunswick's pre-existing medical conditions. Dr. Dasari's description was enhanced to state that she would testify about issues related to diagnosis, prognosis, causation, and recommendations related to the course of pain management. Similarly, Dr. Khanna now was disclosed as having knowledge of medical opinions related to treatment, diagnostic testing, diagnosis, prognosis, past medical conditions, current medical conditions, and issues related to causation.

On April 3, 2012, the court approved the parties' agreement to extend the case management deadlines, and the discovery deadline was extended until July 2, 2012. Menard took Dr. Khanna's deposition on May 9, 2012. Following the deposition, Menard's counsel stated that it would take Dr. Foreit's deposition. On June 28, 2012, Brunswick's counsel followed up with defense counsel to schedule Dr. Foreit's deposition and was advised that two of the attorneys assigned to the case discontinued their employment with defense counsel's law

firm and no longer were available for the deposition. Brunswick's counsel e-mailed defense counsel on August 7, 2012, asking again to coordinate the deposition. Defense counsel requested an expert report from Dr. Foreit to facilitate settlement. The report was provided on November 26, 2012. Two weeks later, defense counsel contacted Brunswick's attorney to schedule the depositions of Dr. Foreit and Dr. David Flores. Brunswick's counsel was amendable to the depositions and told defense counsel to call the doctors to schedule the dates for the depositions. On January 3, 2013, defense counsel sent Brunswick's counsel a letter stating that it objected to Dr. Foreit's expert report. Defense counsel subsequently moved to exclude the testimony of the treating physicians because Dr. Foreit's report was untimely and neither Dr. Khanna nor Dr. Dasari provided a report.

Discussion

Federal Rule of Civil Procedure 26(a)(2) governs expert disclosures and reports and states in relevant part:

> (A) *In General.* In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.
>
> (B) *Written Report.* Unless otherwise stipulated or ordered by the court, [expert disclosures] must be accompanied by a written report— prepared and signed by the witness— if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.
>
> (C) *Witnesses Who Do Not Provide a Written Report.* Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
>
> > (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

3

(ii) a summary of the facts and opinions to which the witness is expected to testify.

Rule 26(a)(2)(B) defines an expert witness as "one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." *See also*, **Meyers v. National R.R. Passenger Corp**., 619 F.3d 729, 734 (7th Cir. 2010); **Musser v. Gentiva Health Services**, 356 F.3d 751, 757 (7th Cir. 2004). "All witnesses who are to give expert testimony under the Federal Rules of Evidence must be disclosed under Rule 26(a)(2)(A)" while "only those witnesses 'retained or specially employed to provide expert testimony' must submit an expert report complying with Rule 26(a)(2)(B)." **Banister v. Burton**, 636 F.3d 828, 833 (7th Cir. 2011)(citing **Musser**, 356 F.3d at 756-57); **Federal Rule of Civil Procedure 26(a)(2)(C)**. The expert report serves the purpose of putting the opposing party on notice of the expert's proposed testimony, so the opposing party may form an appropriate response. **Meyers**, 619 F.3d at 734; **Musser**, 356 F.3d at 757-58. The consequence of non-compliance with Rule 26(a)(2)(B) is "exclusion of an expert's testimony . . . 'unless the failure was substantially justified or is harmless.' " **Meyers**, 619 F.3d at 734 (citing *Gicla v. United States*, 572 F.3d 407, 410 (7th Cir. 2009)(quoting Fed.R.Civ.P. 37(c)(1)).

A treating physician is an expert witness when he testifies about opinions formed during or after treatment of the patient. **Musser**, 356 F.3d at 757 n.2; **Meyers,** 619 F.3d at 734-35. This is because such opinions are based on scientific, technical, or other specialized knowledge. **Musser**, 356 F.3d at 757 n.2. Prior to the 2010 amendment to Rule 26, it generally was agreed that a treating physician who testified about his observations during treatment was not required to file an expert report. *See, e.g.*, **Zarecki v. Nat'l R.R. Passenger Corp**., 914 F.Supp. 1566,

4

1573 (N.D. Ill. 1996); ***Krischel V. Hennessy***, 533 F.Supp.2d 790, 795 (N.D. Ill. 2008)("When a treating physician limits his testimony to his observation, diagnosis and treatment, there is no need for a Rule 26(a)(2)(B) report."); ***Fielden v. CSX Transp. Inc***., 482 F.3d 866, 870-71 (6th Cir. 2007)(holding that a formal report is not required when determining causation is an integral part of treating a patient). However, the issue became more confusing where the treating physician intended to introduce evidence concerning the cause of the plaintiff's injuries. ***Krischel***, 553 F.Supp.2d at 796; ***Meyers,*** 619 F.3d at 734-35. In ***Meyers***, the court explained that a treating physician may be required to submit an expert report when his testimony exceeded the scope of his observations during treatment. ***Meyers***, 619 F.3d at 734-35. Physicians who intended to offer testimony regarding causation of the plaintiff's injuries went beyond the scope of treatment and were required to submit a complete expert report. ***Meyers***, 619 F.3d at 734-35. The ***Meyers*** court explained that the determining factor was whether the physician determined the cause of the individual's injuries during or after treatment. ***Meyers***, 619 F.3d at 734-35. ("[A] treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one 'retained or specially employed to provide expert testimony in the case,' and thus is required to submit an expert report in accordance with Rule 26(a)(2).").

  However, after ***Meyers*** was decided, Rule 26 was amended, effective December 2010, to resolve the tension that led some courts to require expert reports from non-retained experts. The amendments did not alter who was required to file an expert report under the rule and still explained that an expert "retained or specially employed" must submit a complete expert report. **Rule 26(a)(2)(B).** However, subpart C was added, mandating summary disclosures in place of

5

complete expert reports, of the opinions to be offered by expert witnesses who were not retained or specially employed to give expert testimony. **Rule 26(a)(2)(C).** The committee notes explained that common examples of experts required to submit summary disclosures included physicians or other health care professionals. **Rule 26** (Committee Notes, 2010 amendments). The amendment attempted to clarify the distinction between an expert retained for the purpose of providing expert testimony and non-retained experts. *See* **Rule 26(a)(2)(C) & Committee Notes** (stating that non-retained witnesses must provide "a summary of the facts and opinions to which the witness is expected to testify."); *Crabbs v. Wal-Mart Stores, Inc*., 2011 WL 499141, *1 (S.D. Ind. Feb. 4, 2011)(explaining amendments to Rule 26 to determine if treating physician must provide an expert report).

Under the amended rules, physicians who are expected to testify, at minimum, are required to file a summary report, disclosing "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." **Rule 26(a)(2)(C).** Whether they are required to provide only a summary report or a complete expert report depends on the breadth of their testimony. If a treating physician intends to testify beyond his observations, he must provide a full expert report.

In her initial disclosures, Brunswick identified three treating physicians who she expected to testify on her behalf. Brunswick initially disclosed that Dr. Foreit would testify about her treatment and injuries. After the deadline to disclose expert witnesses and file expert reports, but before the close of discovery, Brunswick amended her initial disclosures to state that Dr. Foreit also would testify about issues related to causation and the proximate cause of

6

Brunswick's medical condition in her lumbar spine, hips, and legs, her prognosis, and the aggravation of her pre-existing ailments. Similarly, Brunswick reported for the first time in her supplemental initial disclosures that Dr. Dasari would testify about issues related to causation and that Dr. Khanna would testify about issues related to the responsible or proximate cause of Brunswick's medical condition in her lumbar spine, hips, and legs.

Brunswick argues that the treating physicians identified in her initial disclosures were not required to provide an expert report and that, even if they were required to submit a report, Dr. Foreit's untimely disclosure of his expert report is excusable. Brunswick points the court to *Aurand v. Norfolk Southern Railway Co.*, 802 F.Supp.2d 950 (N.D. Ind. 2011). In this case, the court addressed whether the plaintiff's treating physician was required to provide an expert report prior to testifying about the cause of the plaintiff's injuries. *Aurand,* 802 F.Supp. 2d at 962. The court concluded that the treating physician was required to produce an expert report because the causation determination was not made during treatment. *Aurand,* 802 F.Supp. 2d at 963. The court explained that the medical records did not contain causation determinations and that the treating physician could not recall any specific discussions with the plaintiff concerning the causation of his injuries. *Aurand,* 802 F.Supp. 2d at 963.

Brunswick reads *Aurand* as holding that the expert report only was required because the physician did not include his causation determination in the medical notes, and she argues that here Dr. Foreit made the causation determinations during the course of treatment, negating the need to provide an expert report. Brunswick points to numerous notes within her medical records to support her position, including statements that all of Brunswick's issues started after her fall in January 2009. With regard to the two other treating physicians Brunswick identified,

7

she devoted little more than a sentence to the admissibility of their testimony, stating that "Nitin Khanna, M.D. and Satish Dasari, M.D. should be permitted as witnesses to testify as to their professional and medical treatment, diagnostic testing, and diagnosis relating to the plaintiff, all of which information is contained within their respective reocrds [sic]." (Pl.'s Br. p. 11)

The inclusion or exclusion of causation in the physician's medical notes does not dictate whether an expert report of any kind is required. Rather, this may be dispositive of whether a full expert or summary report was required. Under the amendments to Rule 26, treating physicians are required, at minimum, to provide summary reports of their prospective testimony. Any prospective testimony concerning causation might require a complete expert report if the causation determination was not made during the course of treatment. Therefore, at minimum, the physicians Brunswick identified were required to provide a summary report of the subject matter, facts, and opinions to which they intended to testify, and no reports of any type were turned over by the plaintiff's expert disclosure deadline.

Brunswick further argues that the medical notes serve as a substitute to the expert report. If the court only were to require that the information treating physicians intend to testify about to be present in the medical records, this would dispose of the summary report requirement mandated by Rule 26(a)(2)(c) and could result in abuse by inviting a party to dump a litany of medical records on the opposing party rather than preparing a summary of the expert's testimony. *See* **Ballinger v. Casey's General Store**, 2012 WL 1099823, *4 (S.D. Ind. March 29, 2012). Turning over medical records does not comply with the requirements of Rule 26(a)(2)(c).

Dr. Foreit did provide an expert report, but well past the deadline to disclose and submit expert reports. The case management order directed Brunswick to disclose her experts and

provide expert reports by August 2, 2011. In August, defense counsel asked Brunswick for Dr. Foreit's report, however, the report was not prepared and turned over until November 27, 2012.

Under Federal Rule of Civil Procedure 16(b), the court is required to issue a scheduling order setting forth the deadlines for the parties to complete discovery and file motions. "A schedule may be modified only for good cause and with the judge's consent." **Rule 16(b)(4).** Good cause is shown when, despite a party's diligence, the timetable could not reasonably have been met. *See* ***Link v. Taylor***, 2009 WL 281054, *2 (N.D.Ind. Feb.2, 2009). Federal Rule of Civil Procedure 37(b)(2) gives the court authority to sanction a party for failing to comply with a court order, such as one entered under Rule 16. Rule 37(c)(1) also allots sanctions for failing to provide information or identify a witness as required by Rule 26(a). The appropriate sanction for failure to comply with the expert report requirement is to exclude the expert's testimony, however, this sanction will not be imposed if the failure was substantially justified or harmless. ***Meyers,*** 619 F.3d at 734.

In ***Banister v. Burton***, 636 F.3d 828, 833 (7th Cir. 2011), the Seventh Circuit stated that the district court "need not make explicit findings regarding a justification or the harmlessness of the Rule 26 violation, but . . . the following factors should guide the district court's discretion: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *See also* ***Westefer v. Snyder***, 422 F.3d 570, 585 n. 21 (7th Cir. 2005) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

Brunswick offers little information to explain why the physicians did not provide expert

reports by the deadline ordered by the court. This oversight appears to be due to Brunswick's mistaken belief that the physicians were not required to provide any type of expert report. This does not reflect bad faith or willfulness on behalf of Brunswick, rather a misunderstanding of the rules.

Both parties agree that Dr. Foreit's testimony is important to establish the cause of Brunswick's injuries. Absent his testimony, Brunswick may be unable to demonstrate to a jury her fall caused her injuries or to prove the extent of her damages. This testimony is vital to the viability of Brunswick's claim. If the court were to exclude this testimony, it may prove more difficult for a jury to reach a conclusion on the merits of her claim.

Menard argues that it will suffer prejudice by the untimely disclosure, but the court is not persuaded. In *Balliner*, the court faced a similar challenge when deciding whether to allow the plaintiff's treating physician, who was disclosed in the plaintiff's initial disclosures but did not provide an expert report, to testify. *Balliner*, 2012 WL 1099823 at *4-5. The court determined that the plaintiff's treating physician could testify about the plaintiff's treatment because the defendant was put on notice of the treating physician several months before the close of discovery when he was identified in the plaintiff's initial disclosures and the plaintiff's medical records were turned over early in discovery, which gave the defendant notice of the treating physician's personal observations, diagnoses, and treatments. *Balliner*, 2012 WL 1099823 at *4-5. However, the court was not willing to "blindly spring" causation testimony on the defendant two months before trial, finding such proposed testimony was not accounted for in the medical notes. *Balliner*, 2012 WL 1099823 at *4-5. In a similar case, the court weighed the additional factor of the added expense to the defendant. *Bell v. Columbia St. Mary's Hospital*

10

*Milwaukee*, Inc., 2008 WL 163671, *3 (E.D. Wis. Jan. 16, 2008). The court explained that without an expert report, the defendant would not know the basis of the physician's opinions and may have to conduct lengthier depositions and would incur a greater expense. *Bell*, 2008 WL 163671 at *3.

Taking these factors into consideration, the court does not believe Menard would be prejudiced by allowing Dr. Foreit to testify. Brunswick identified Dr. Foriet in her initial disclosures and stated that she intended to call him to testify about her treatment and injuries sustained from the fall. Although Brunswick did not amend her initial disclosures to specifically state causation until September 9, 2011, after the plaintiff's expert disclosures were due, the parties subsequently extended discovery until July 12, 2012, giving Menard time to explore this amendment. Moreover, although not explicitly stated, Brunswick's initial disclosures suggested that Dr. Foreit would testify about causation. Specifically, it stated that he would provide testimony about the injuries Brunswick sustained "as a result of the incident". Regardless, Menard was on notice of the broad topics on which Brunswick intended to call Dr. Foreit to testify for at least ten months of discovery.

Menard also was provided with Brunwick's medical records prepared by Dr. Foreit. At the latest, these were turned over at Dr. Khanna's deposition on May 9, 2012.[1] Menard was able to review the medical records and derive a general idea of Dr. Foreit's observations, diagnoses, and treatments. Although the medical records cannot serve as a substitute for the medical report, this factor weighs against a finding of prejudice as information concerning Brunswick's

---

[1] It should be noted that Menard took Dr. Khanna's deposition without the benefit of a complete expert report and does not claim that the deposition was not informative.

treatment was made available to Menard prior to the close of discovery.

It is true that Menard may have incurred greater expense if it had been required to take Dr. Foreit's deposition without the benefit of the expert report and a second deposition had to be scheduled. However, Dr. Foreit did provide an expert report. After receiving the report, Menard's counsel requested for a deposition to be scheduled. Brunswick's counsel was amenable to the deposition and reached out to defense counsel to schedule the deposition, but was met with the current motion. Menard could have taken the deposition after receiving Dr. Foreit's report and avoided any additional expense but chose not to do so.

Additionally, Rule 37 imposes a duty to meet and confer regarding discovery disputes. After Menard's counsel requested to take Dr. Foreit's deposition, Brunswick's counsel followed up with defense counsel regarding Dr. Foreit's deposition on June 28, 2012. Brunswick's counsel sent a follow-up e-mail in August, informing defense counsel that he had been trying to coordinate Dr. Foreit's deposition with defense counsel's office for months without response. Dr. Foreit's deposition never was scheduled. This reflects that Brunswick was willing to resolve the disagreement, but the record does not reflect that Menard made a similar attempt. Although this does not excuse Brunswick's counsel's failure to provide an expert report, Menard's unwillingness to coordinate a deposition does negate a great degree of the prejudice it claims. Menard had the opportunity to take Dr. Foreit's deposition after the expert report was turned over. This factor weighs, if at all, only slightly in favor of Menard.

The more controversial debate surrounds whether it would be prejudicial to allow Dr. Foreit to testify about the causation of Brunswick's injuries. In ***Balliner***, the court specifically rejected the prospect of the treating physician testifying about causation, explaining that the

12

treating physician simply wrote down what the plaintiff said happened. ***Balliner***, 2012 WL 1099823 at *5. The court noted that "[t]his is why a Rule 26(a)(2)(c) summary is important: it clarifies the expected testimony of a witness and the bases for the conclusions". ***Balliner***, 2012 WL 1099823 at *5. The court further stated that it would be extremely prejudicial to reveal causation testimony to the defendant two months before trial without the benefit of any explanation or discovery. ***Balliner***, 2012 WL 1099823 at *5.

Here, the court cannot conclude that Dr. Foreit's causation testimony was sprung on the defendants. Brunswick amended her initial disclosures to reveal that Dr. Foreit would testify about causation ten months before the close of discovery, giving Menard substantial time to conduct a deposition. Moreover, Dr. Foreit's notes discussed causation, stating that "all of [Brunswick's] issues started after a fall injury that occurred in January of 2009". Dr. Foreit also provided an expert report, setting forth the basis of his expected testimony. Menard had ample time to conduct any discovery it desired. For this reason, the court **RECOMMENDS** that Menard's motion is **DENIED** with respect to Dr. Foreit.

Brunswick does not argue that Dr. Khanna and Dr. Dasari should be permitted to testify about causation, stating only that they should be allowed to testify about "medical treatment, diagnostic testing, and diagnosis relating to the plaintiff" (Pl.'s Br. p. 11) Arguments not raised in response to a motion are considered waived, therefore, the court only needs to address whether Menard would suffer prejudice if the court allowed these physicians to testify about their treatment of Brunswick without providing a summary expert report. *See **Hernandez v. Cook County Sheriff's Office***, 634 F.3d 906, 913 (7th Cir. 2011); ***Palmer v. Marion County,*** 327 F.3d 588, 597 (7th Cir. 2003); ***Laborers' Intern. Union of North America v. Caruso***, 197 F.3d

1195, 1197 (7th Cir. 1999); *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998).

These physicians also were identified in Brunswick's initial disclosures. Menard, therefore, was on notice that Dr. Khanna and Dr. Dasari were expected to testify about their treatment of Brunswick. Menard also had the physicians' medical notes to review. Menard deposed Dr. Khanna about her treatment of Brunswick and, despite having the same notification that Dr. Dasari may be called to testify about his treatment of Brunswick, chose not to depose Dr. Dasari. This suggests that it was a strategic choice by Menard not to depose Dr. Dasari rather than a lack of knowledge of his proposed testimony. Because Menard had this information since the initial disclosures, conducted discovery based on the disclosures, and has not indicated how it would be prejudiced by allowing the treating physicians to testify about their treatment of Brunswick, the court is not convinced that this oversight would cause Menard prejudice. Dr. Khanna and Dr. Dasari may testify about their treatment of Brunswick, but the court will prohibit Dr. Khanna and Dr. Dasari from testifying about causation or prognosis.

In weighing these factors, the court finds that Brunswick's error in failing to provide expert reports was harmless, and any resulting prejudice can be remedied by limiting the physician's testimony as outlined above. Menard was on notice of the proposed testimony, had the medical notes prepared by the treating physicians available to it, and had time to conduct any necessary discovery. Moreover, if Menard wanted the expert reports to conduct depositions, it should have conferred with Brunswick as required by Rule 37. For these reasons, it is recommended that Menard's motion is **GRANTED IN PART** and **DENIED IN PART.**

Pursuant to 28 U.S.C. §636(b)(1), the parties shall have fourteen days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court.

14

The failure to file a timely objection will result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. ***Willis v. Caterpillar, Incorporated***, 199 F.3d 902, 904 (7th Cir. 1999); ***Johnson v. Zema Systems Corporation***, 170 F.3d 734, 739 (7th Cir. 1999); ***Hunger v. Leininger***, 15 F.3d 664, 668 (7th Cir. 1994); ***The Provident Bank v. Manor Steel Corporation***, 882 F.2d 258, 260-61 (7th Cir. 1989); ***United States v. Johnson***, 859 F.2d 1289, 1294 (7th Cir. 1988); ***Lebovitz v. Miller***, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

ENTERED this 24th day of June, 2013

/s/ Andrew P. Rodovich
United States Magistrate Judge